Case No. 17-3565 Coleen O Toole v. Maureen O Connor Argument not to exceed 15 minutes per side Mr. Finney, you may proceed for the appellants Thank you. Good morning, your honors Good morning May it please the court My name is Chris Finney. I'm the attorney for the appellant, Bill O Toole There is a tension between Do you have some time? I do, your honor. About three minutes if that goes well There is a tension between traditional or customary analysis under the First Amendment on the one hand and as applied to judicial elections by the Supreme Court and the William J. Lee decision on the other hand For example, there is no doubt at least in my mind that the type of restriction set forth in Rule 4.4e would be stricken by this court as unconstitutional were it to apply to a U.S. Senate race or apply to a congressional race or a city council election On the other hand, in William J. Lee the U.S. Supreme Court said that in the very limited circumstance of a judge a candidate for judge soliciting contributions that a restriction against that is in fact constitutional Now what the state of Ohio wants to do what the Supreme Court wants to do meaning the Ohio Supreme Court wants to do is to take William J. Lee and say that there is no scrutiny at all of rules that apply to judicial fundraising or to judicial speech at all in judicial campaigns and that obviously cannot be correct but we know that at least in certain applications judicial campaigns operate under a different set of rules so the question for this court is where are those rules? Now we know that the types of temporal limitations set forth in Rule 4.4e have been stricken in a traditional First Amendment analysis For example, restrictions of when you can place political signs only 30 days or 60 days before an election are all unconstitutional The courts have said we're not going to allow that type of content-based restriction and fundraising restrictions in both Zimmerman v. City of Austin and Zeller v. Florida Bar a district court decision dealing with judicial elections have all been stricken as well But the question before you is twofold One, does William J. Lee give the Ohio Supreme Court carte blanche to write rules that are subject to no judicial scrutiny by the federal district court at all whatever the Ohio Supreme Court says applies because remember this case is on a motion for judgment on the pleadings There was no factual development no opportunity to say that the line drawing by the Ohio Supreme Court was improper and prejudiced my client's rights challenging an incumbent member of the Ohio Supreme Court Did? So the first question for you all is does William J. Lee just say we never are going to look at the rules established for judicial campaigning whatever the Ohio Supreme Court says goes because the United States Supreme Court carved out a separate rule and then the separate and distinct issue is under Randall v. Sorrell is there any analysis of the line drawing at all So the first question under William J. Lee really gets to the strict scrutiny analysis of the rule and the second gets to really a different analysis under Randall v. Sorrell So Randall is an interesting case because under Buckley the United States Supreme Court said that contribution limits are constitutional and just like William J. Lee with the Ohio Supreme Court here they said well that means we can write whatever rule we want and in Randall v. Sorrell the court said no, there are still limits on what you can do with contribution limits you can't write any crazy rule you want it still has to follow two rules does the rule prevent candidates from amassing the resources necessary for effective advocacy and does it magnify the advantages of incumbency I'm interested in that how do you think those two provisions or I guess the lines were crossed with respect to your client Thank you very much for that question and really Judge this applies with your experience if you look at the rules in Michigan where there are no primaries and then you have about nine months of time under that temporal limitation so let's say temporal limits are allowed but what temporal like can you say five days can you say two days and in Ohio the rule that Judge O'Toole had to run under was a 120 day limitation prior to the primary the primary was in March now early voting starts 30 days before that so really the primary starts in February her filing deadline the 120 day starts back in late November, December over the holidays so you're going to raise money this is a real practical question we're going to raise money from Thanksgiving to Christmas when everybody's out of town and then if you rule that period out before voting starts you're dealing with about 60 days for a statewide election in which Judge O'Toole has to run in 11 media markets and get a half million or more primary votes and she has a very narrow window of time within which to raise money and run an effective campaign and when you look at that Judge Larson under the Rambo versus Sorrell standard which said prevents candidates from amassing the resources necessary for effective advocacy and magnify the advantage of incumbency and then you combine that with the fact that the district court in this case gave judgment on the pleadings where we had no factual development at all to say here's why that line is wrong it really eviscerates the first amendment as it relates to judicial campaigning it said there will be no judicial scrutiny of this rule, it looks just fine to us without allowing Judge O'Toole to have a little excessive to say there's no judicial scrutiny he looked at the law and made a decision on it yes, you're certainly right one of the reasons for that did not require actual development maybe it should have maybe it shouldn't have, it's not saying that he said there's no scrutiny yet let me give you even more deference to the district court in William Julie the United States Supreme Court prohibited factual development as well and there's only been two cases in which the United States Supreme Court has ever done that in the first amendment context it's amazing personally the case, your client is not the best party to be making this argument in that your client is a repeat candidate who's run before and has had an opportunity to accumulate Worcester funds and consequently it's probably hard to say that she's being disadvantaged based upon the incumbency to the same degree as a first time candidate yes your honor, in fact we have a companion case we argued about three weeks ago before the 6th circuit of Blatt versus the House Supreme Court as well and in that case Mr. Blatt's a first time  Judge Clay raise a very important perspective, which is as a prior candidate for office she could have amassed a quarter million dollars that some of the judicial candidates have and husbanded that so that when she came into the election she'd have those resources, makes sense and it certainly makes sense just from the district court judges perspective to say, well this looks fair to me, but without factual development and understanding the context for example, there are some districts in Ohio that are vastly leaning to the Democrats or vastly leaning to the Republicans and the primary is not a meaningful primary, or the general is not even a meaningful general, there are some judicial candidates that have no opponents or cycle after cycle after cycle and those candidates have an advantage in being able to build up resources interesting argument but would that sort of mean that 4.4E would be constitutional in some districts and unconstitutional in others constitutional as to some candidates unconstitutional as to other candidates you can clearly imagine that a candidate in Judge O'Toole's position holding it to her personally but such a candidate might in fact have a million dollars in the bank but be saying, hey I ought to be able to raise even more earlier as a if you develop facts, that might be the case and in that case if you say, well counsel, all of your arguments fall apart because this judge candidate has a million in the bank would that raise the oddity that in a serious first amendment case it's constitutional for some people in some districts and not for others I don't think that's the argument that I'm making and I don't think that's the issue here, I think the issue is and let's really look at this in the context what the courts did in Buckley is set contribution limits or legal expenditure limits or not and that rule eventually filtered down to case law in Ohio for Supreme Court races and so because there could not be a limit on campaign expenditures, they said we're going to limit the amount of time that you have to raise money which really operates in the same way and I'm trying to respond to your question, Your Honor, but I don't think that I think when the rule again, let's ask the same question in a U.S. Senate race well, it seems certainly fair that if you're going to run against Sherrod Brown 120 days for a statewide election from my gut as a judge, district courts looks fine to me, no factual development and it works just fine and the reality is there are well-known candidates in Ohio there are wealthy candidates in Ohio there are well-connected candidates in Ohio and there are some people who don't share those advantages either historically or just in a particularized instance I don't think that affects the constitutionality of the rule. Counsel, you mentioned that this other case has already been argued sometimes we talk about a race to the clerk's office between different panels if that case were to be decided faster than this one would that likely control our decision here in either direction? I wouldn't say control, your honor I think that there are distinct issues in the Platt case as a first-time candidate, you don't have the ability to amass any resources, it's a clearer instance, but I think in this in this context it should piggyback on the same rule, I think the temporal limitations I appreciate your candor but it sounds like you're saying that if you win in the Platt case you still might not win in this case but if you lose in the Platt case you should almost certainly lose in this case. On that issue I would agree, your honor. I know Platt is broader because it's challenging and more, but with respect to 4.40. My time is short but I have one more point which is going to come out as two. Who are the rule writers the same people who are benefiting from writing the rule number one, and number two is there's a problem in that in the strict scrutiny analysis there's really three questions, do we have a compelling state interest, does the rule advance that interest, and is it narrowly tailored? The Supreme Court has this advantage judges are due a lot of respect, and so we instantly say, well if they wrote the rule it must be to advance judicial integrity but from my client's perspective the point she very much wanted me to make to this panel is that this actually detracts from judicial integrity because when you have that 60 day window that I just described to you that's unlike Michigan Judge Larson where you have much more time, when you have that 60 day window, you're scrambling for money, and in the Caperton decision from the United States Supreme Court one of the factors that they cited in Caperton was the fact that of the closeness of this large campaign contribution to the election day, which actually detracts from judicial integrity you might want to wrap up and let you go on those were the points that I wanted to make, that this line drawing that they have come up with, and certainly I have respect for the House Supreme Court and everyone should, but to assume that their rule making in fact advances judicial integrity rather than detracts from it is not correct in this instance. Thank you all. Thank you. Good morning, your honors. May it please the court, Drew Campbell on behalf of the appellees. I'm joined at the council table by my partner, Greg Graebacher. Your honors, the issue before the court today is exactly the issue that was before the court in August of 2015 when we were here first. Is Ohio's Rule 4.40 a constitutionally permissible restriction on speech? Well, this court ruled in a published decision which was binding on the trial court and binding on any panel in this circuit ruling that the rule was constitutional. Is that the law of the case? It's the law of the case and it's the law in your local rule 32.1b that says that a published decision of a panel of this court is binding on all other panels until it's overruled by the outlawed decision. Would it make any difference if that was in the context of a preliminary injunction? I don't believe it does, your honor. In fact, this court's decision in the NHL Players Association, which we have cited in our brief, points out that where a decision rules on issues of law as the O'Toole case did here where there's been no intervening change in the law, certainly no intervening change in the legal theories, there's certainly no manifest injustice in applying the law, the law of the case applies and under your local rule, the trial court and it was binding on this panel as I believe it's binding on the Platt panel. In any event, In any event, the court made this ruling back in 2015 and so here we are today. The parties agree that the compelling interest here has been established as a matter of law. Ohio's interest in protecting and preserving the independence, the impartiality and the integrity of its judiciary is its compelling interest of the highest order. William Dooley tells us that, O'Toole v. O'Connor tells us that, and they told us that as a matter of law. The issue here is whether the rule is narrowly if not perfectly tailored and whether the rule advances the state's interest. A test we call strict scrutiny, not carte blanche, strict scrutiny as this court applied in the O'Toole case. But we know the rule doesn't prohibit too much speech. It's not over-inclusive because O'Toole told us this. The rule zeroes in on one thing. The solicitation and receipt of money. Activity that most implicates the state's interest and most creates a risk to the public's perception of the integrity of our judiciary. Look at all the things the rule doesn't regulate. There's no temporal restriction on a candidate's ability to solicit funds. There's no restriction on how much the committee can raise, how much it can spend, where it can go. So you're saying this only applies to committees, but you're saying not the candidates personally, but part of these other rules is the candidate personally can't solicit. 414A says that the candidate may solicit personally under certain circumstances. A broader rule than the one that was upheld by William T. Lee. They have to talk to a room of maybe 20 or more people. They can make a request through So they can't solicit I was referring to. They can't face-to-face, single hand-to-hand solicit. Not one-on-one. Yeah. Yes. So you're saying that nine months before the election they can speak to the City Club of Cleveland and say, hey, I am running and you can send a check to 2315 Nicholas Boulevard. Yes, six years before the election the candidate can say that. But the committee cannot receive the money. So the committee can't receive the money until 120 days. Correct. Yes. And does that have to be a regular committee? In other words, could Judge O'Toole's candidate O'Toole's college classmates go out and solicit money and just say send for a check? There's no restriction on that. And I want to correct one point. The candidate herself can begin to contribute to her own committee 210 days before the primary. So in the chart we presented in our brief, which tracked the fact pattern here, it's about a 16-month window of fundraising activity that candidates can participate in. You call fundraising activities also include post-election time. There's 120 days after the election as well. And is that rule that they contribute to pay off the debt but not to add beyond the debt? Or do they keep building up the war chest after the election? In the case of a candidate who has run through the general election and was either won or lost, there's no restriction. Either won or lost. There's no restriction on that. Is it limited to an amount of debt? No. None of that is. I won in November and all of a sudden lots of people want to give me funds even though my war chest is still full. Ohio has chosen to limit fundraising in proximity to the election cycle. Ohio has not chosen in that particular instance to tell the candidates what they can or cannot do in terms of fundraising. The point I was making was that the rule leaves open a broad array of political activity, a broad array of speech activity. This court said no tool that it regulates only the narrowest slice of speech. The rule's not over-inclusive. I just want to be clear since I was on the earlier tool that the statement there that Plaintiff has failed to demonstrate a likelihood of success at that time in that litigation, that's not really a holding that they couldn't possibly succeed as the case goes forward. Otherwise there'd be no reason to let the case go forward. Yeah, we're not relying on that. This court reviewed the legal determinations to know and that's the point of the NHL Players Association case and all the circuit on this point. When the court rules on legal issues and there's been no subsequent intervening law then that's a binding authority and it's law of the case. But getting back to strict scrutiny, we know that the rule doesn't regulate too little speech. It's not under-inclusive. We know that because this panel told us this before. The rule has no exceptions. It applies to each candidate across the board irrespective of the point of view. Each candidate... So I'm interested in a slightly different point, which is what about this rule that you're allowed to carry over funds and that those who have carried over funds don't have those expenditure time limits on them. They can spend the funds whenever they want as long as they've carried it over from a previous election. Well that rule isn't established by 4.4E. The carry over fund provision is a matter of statutory authority in Ohio. But to your question, any candidate is permitted to spend money they have pursuant to whatever the campaign spending rules are because Ohio is not in the business of restricting the ability of political candidates in general and judicial candidates in particular of spending money. That's the core of free speech. They can spend it if they have it. Can they spend money other than by committee? So under your statement of the individual who can speak for the city, can that candidate then spend the money in the candidate's own name but not by committee? Well a candidate can spend money consistent with Ohio law for campaign related activities or political related activities and nothing prevents a candidate from spending their own money. But if it's somebody else's money it has to be, you just said they can give it to a candidate. They cannot give money to a candidate? No. The public can only give money to a campaign committee. A judicial candidate may not personally receive money. That's what 4.4 E is telling us and 4.4 A. But I thought the committee couldn't raise money The committee The committee is limited to 120 days. That's right. The candidate is not generally limited but the committee can only solicit and receive money. I thought you said the candidate couldn't spend money. The candidate may spend money The committee may solicit and receive funds within that 120 day window. I'm in the pre-window. A few minutes ago you were saying well it's not so bad because the candidate can speak to the city of Cleveland and people can send the candidate checks. Oh I did not. If I said that I misspoke. The candidate may solicit the candidate to say at a certain date and time you may send money to my committee and I implore you to send it. But you can't do it. You cannot do that. The committee cannot receive it. So that money cannot be used to get a message. Not at that point. And the only point I'm making Your Honor. But there are no restrictions on incumbents. So incumbents who already have their war chest can spend that money at any time. That's correct. I understand that perhaps this isn't the best plan for that point since she's also ran previously. That's also correct. So I asked you the same question I asked your adversary with respect to the plant case which is already out there and we have no idea how that's going to come out. Depending on which way it goes, will that bind this case? Should that decide that case? I believe that the plant panel is bound to follow. That's their business. Tell me what they do. If you lose on 4.4E should that mean that you lose before us? It should have no impact on this court. In fact, this court specifically identified that scenario in your published decision earlier and pointed out that that's a different case. That should have no impact on the way this panel will go. But if they decide the case and they publish the case and that's what they decide to do we'd be bound to follow what is the precedent, correct? Well, I don't think so because you've got some factual differences and you have your own. That's why I think Judge Boggs is trying to get at is this case different? I was trying to answer his question. I don't believe that the outcome of that decision will control this one. Well, if you win? Well, if we win, that's great. And I expect that we will. However, we have authority from this court in this case with these people that I think controls the outcome of this case. Is your point in part that if the Platt panel fails to follow the precedent set by the prior O'Toole case then the Platt panel would not be following the law because it's bound by the prior O'Toole case and therefore we then would be free to ignore the Platt decision that fails to follow the circuit precedent in the pre-existing circuit precedent. Well, it creates a host of dynamic possibilities. I just look forward to this panel following the decision in this case. But they might be differently situated because, in part, your argument rests on the law of the case, which wouldn't bind that panel. We have two layers. Correct. And I would add that I think the local rule is we did say that the Platt panel also should control what they do as well. Let's talk for a moment about the Randall case. The request of this court to apply the so-called warnings that come from the Randall case. Is that a constitutional proxy for Williams v. Lee? Well, there are a couple of red flags that come up in the appellant's reliance on that case. One would think that if Williams v. Lee thought that Randall had any relevance at all, it would have mentioned it. But it didn't because it doesn't. The Randall case is a political case. The appellants rely solely on First Amendment cases on the political sphere, not the judicial sphere. And that should give us some pause for the court because Williams v. Lee itself said that his precedents in the political spectrum have little bearing on cases in the judicial one. That's because the state's interests are different. But even if we apply the warning signs of Randall, it doesn't make any difference here. The fact that Judge O'Toole raised so little means that the rule does not magnify the benefits of incumbency. And the fact that her opponents raised so much means the rule doesn't preclude candidates raising sufficient money to go out and advocate for their positions. In fact, these are the very allegations that were contained in the complaint, and the amended complaint in this case, allegations that I think really undermine the constitutional theory that the appellants were trying to advance. And let's talk for a moment about discovery. They claim they should have had discovery in this case. But you know, U. Lee didn't rely on discovery when it looked at the compelling state interest, narrow tailoring, and whether the rule advanced the state's interest. This panel, this court, and O'Toole didn't look at those things either. When the appellants had an opportunity to ask for discovery, look at what they did. In their Rule 26-F report, they asked for discovery about the interpretation of the rule, the scope of the rule, the history of the rule, how it advanced the state's interest. Those are questions of law. Those are not questions of fact. They asked for information regarding the way that the public's perception might be affected by these rules. But Williams himself said that the public's perception is difficult to give a precise definition to, and it's not really capable of documentary record. Every single issue they asked for in discovery was a legal issue that the trial court concluded would not advance its analysis at all. And I would add that other courts who have looked at this have come out the same way. A recent decision on the 876-512-28, 876-1228, looking at a Montana rule, said that Montana, quote, need not present empirical evidence that something as abstract as a decrease in actual or perceived judicial impartiality versus rule-of-survival scrutiny. The Sixth Circuit and the Ninth Circuit have both come down exactly the same place as Williams and Lee. These are legal issues that courts can decide as a matter of law. I see my time is almost up, but I would like to leave the court with this. Strict scrutiny has been articulated in the Williams and Lee case. French v. Jones offers a pretty cogent discussion about the development and the evolution of First Amendment law in the specific context of judicial elections, where we have a rule, like this one, that has permitted candidates to effectively raise money and run for statewide office. There is no constitutional defect. We think that the rule is constitutional. We think this court was correct the first time. We ask you to affirm the trial court. Thank you. Thank you, Your Honor. A couple things. First of all, I failed to introduce my co-counsel, Brian Schraub, from my office. Mr. Schraub pointed out an error that I made in my opening, which was just that my client was running against an incumbent. She was not. They were both, I think, running for the Supreme Court. Judge Larson, I spent considerable time on my merits argument that the temporal limitation should be subject to these line drawings and how it contrasts with the nine months in Michigan. But the other two contrasts with Michigan, as you point out, are in Michigan that the judge is required to disgorge all of their campaign funds after the election so that everybody starts on a level playing field in a subsequent election. Interestingly, when Ohio wrote its rule, there was something called the McQuaid Commission that advised the Ohio Supreme Court on how to write a fair rule to do these temporal limits. And what the McQuaid Commission specifically required or recommended was that judges disgorge all of their campaign contributions when they...so everybody starts on a level playing field. But if that's a better rule, the question is whether it's unconstitutional. You're correct, and let me add to that something that I'm not sure was fully developed initially, which is that if you don't have the money, you can't spend it. But if you have it, you can. So her opponent in this race, and a theoretical opponent, one of which had a quarter million dollars in the bank starting the race from a prior judicial election, they can spend money for the entire cycle. She also had a war chest. It's just that her war chest was smaller. No, there's no question, Your Honor. And again, that comes from this different positioning. Some candidates are poor. Some are in more hotly contested districts. Some people had an opponent in the prior election. Doing away with that rule wouldn't change that. I mean, the fact that some candidates come into it with their own personal wealth, and some come from competitive parts of the country, that some come from parts of the state that are more controlled by one party, doing away with this rule wouldn't eliminate any of that. There's no question, Your Honor. And I'd like to amplify the difficulty that the House Supreme Court has. Because if you want to have rules for campaigning, you've got to draw the line somewhere. And then wherever you draw the line, somebody's going to want to pick those lines apart, right? And that's what you're essentially saying to me, and I understand that. But the point is, this was a motion for judgment on the pleadings. There was no factual development, no ability to say where the line was drawn, which is what Randall versus Sorrell was about. Where the line was drawn is unconstitutionally unfair and infringement on the First Amendment. And again, Randall versus Sorrell tells us what that line is. Prevents candidates from amassing the resources necessary for effective advocacy, and magnifies the advantages of incumbency. So that those candidates who are wealthy, who are well-connected, who have a good name, who have a history of fundraising, have a magnification of those advantages because there's only 60 days within which you can raise your money. That's the point we want to make with that. And then finally on the issue of the finding law of the case, as I believe Judge Boggs pointed out, why ever have subsequent hearings once you've ruled a preliminary injunction? The reality is a preliminary injunction is, and there's plenty of case law that talks about this, is meant to deal with the emergency presented by that particular issue, and it's not a fully developed record as far as the decision is concerned. It certainly provides guidance as the case goes forward. I've been, had a preliminary injunction go back down to the district court, and the district court gives great deference to what the Sixth Circuit had to say, appropriately so, but it's not the last word because people don't have the time for factual development to do all that. But the other thing, I think this has been fully developed, but, again, think about it in the U.S. Senate context or in Congressional context. He says, well, it's okay to solicit personally to certain groups outside the 120-day limit, but you can't accept the money, so you're out giving a speech in August, and you say, I'd like everybody to give me, but you can't write the check right before Thanksgiving. It's ridiculous, and it's certainly not the kind of standard that strict scrutiny calls for. Thank you all. Thank you.